UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DIVISION SIX SPORTS, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-03879-SEB-MJD ) |
| THE FINISH LINE, INC. OF DELAWARE, et al. | ) ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS COMPLAINT (DKT. 22)**

Plaintiff Division Six Sports ("Division Six"), a California corporation, brought this breach-of-contract action in diversity against Defendant The Finish Line of Delaware ("Finish Line"), a Delaware corporation. Now before the Court is Finish Line's motion to dismiss the complaint for failure to state a claim on which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), arguing that no contract bound the parties at the time of the alleged breach. For the reasons explained below, Finish Line's motion is granted.

**Background**

The complaint, read together with the contractual instruments attached to it, *see* Fed. R. Civ. P. 10(c), alleges the following: Finish Line is a retailer of athletic footwear and apparel. Division Six is in the business of acquiring the excess inventory of such retailers and reselling it. In 2001, Division Six and Finish Line executed an agreement ("the 2001 Agreement") under which Division Six was granted the exclusive right to purchase and resell certain products from Finish Line.

1

Paragraph 9 of the 2001 Agreement established when and how the Agreement was to expire:

> TERM OF AGREEMENT
>
> The term of this Agreement shall be eighteen months (18) commencing on March 1, 2001 (the Effective Date). The term may be extended by the written agreement of the parties prior to the expiration of the term or any extension thereof. If within six (6) months prior to the end of the term, Finish Line shall receive a bona fide, arm's length written offer from any third party to purchase the same or similar Finish Line Products that Division Six Sports is purchasing under the terms of this Agreement, then Division Six Sports shall have a right of first refusal for an additional eighteen (18) month period to extend this Agreement with Finish Line upon materially identical consideration and terms set forth in such third party's written offer. . . . If Finish Line does not receive a bona fide, arm's length written offer at any time within six months of the end of the term, then this Agreement will automatically renew for an additional eighteen (18) month term.

Dkt. 7 Ex. A, at 7–8 (internal subdivisions omitted).

In 2002, before the 2001 Agreement expired, the parties amended it ("the 2002 Amendment") in relevant part as follows:

> CONTRACT EXTENSION
>
> Finish Line would be amenable to adding language to Paragraph 9 of the Purchase Agreement to reflect a three year (3) extension of the agreement (ie. through August 31, 2005). In addition, should Finish Line not receive a bona fide, arm's length written offer from any third party at any time within six months of the end of said extended term, then the Agreement will automatically renew for an additional three (3) year extension.

Dkt. 7 Ex. C, at 2. The "would be amenable" language appears to be an artifact of Finish Line's posture as the offeror of the Amendment by letter to Division Six, which letter was

2

then executed and returned by Division Six. Neither party argues that "would be amenable" undermines the validity of the Amendment.

As amended, the 2001 Agreement was automatically renewed in 2005 for an additional three-year extension, expiring on August 31, 2008. The parties again amended the Agreement in 2008 ("the 2008 Amendment"), providing in relevant part as follows:

> TERM EXTENSION
>
> Finish Line would be amenable to adding language to Paragraph 9 of the Purchase Agreement to reflect a new five (5) year term extension, commencing September 1, 2008 and ending December 31, 2013, ("Third Amendment Extended Term") unless sooner terminated pursuant to any provisions of the Governing Agreements.

Dkt. 7 Ex. E, at 1. The 2002 Amendment and the 2008 Amendment both provided that all other terms of the 2001 Agreement would remain in full force and effect.

In 2014, Finish Line shipped excess inventory to Division Six, as though under the terms of the 2001 Agreement, but then stopped. At the same time, Finish Line was selling other excess inventory to third parties. All of this Division Six alleges to be in violation of its exclusive right to receive and resell Finish Line products under the terms of the 2001 Agreement. This lawsuit followed.

## **Standard of Decision**

A motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of the complaint. *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 879 n.4 (7th Cir. 2012). A legally sufficient complaint sets forth a short and plain statement plausibly showing the plaintiff's entitlement to relief. Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We take all factual allegations as true, *Vesely*

3

*v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir. 2014), unless contradicted by the terms of contractual instruments attached to the complaint, which "must prevail." *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.*, 179 F.3d 523, 529 (7th Cir. 1999). Thus, "'a plaintiff may plead [it]self out of court by attaching documents to the complaint that indicate that [it] is not entitled to judgment.'" *Id.* (original alteration omitted) (quoting *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992)).

## Analysis

The briefs set forth the issues clearly and concisely. Finish Line argues that the 2001 Agreement, as amended by the 2002 and 2008 Amendments, unambiguously expired on December 31, 2013. Thus, it cannot be liable for breach of contract in 2014 because in 2014 there was no contract for it to breach.

Division Six counters that "the parties bargained for a mutually beneficial process that would only end if Finish Line got a deal from a third party that Division Six elected not to match. In essence, the [2001] Agreement was never going to simply expire." Br. Opp. 10. The Agreement would continually renew of its own force for additional eighteen-month terms unless and until Division Six declined to exercise an accrued right of first refusal; the 2002 and 2008 Amendments only varied the duration of the automatic extensions. In support of its construction, Division Six points to the provisions of the 2002 and 2008 Amendments that the amending language would be "added" to, not take the place of, Paragraph 9 of the 2001 Agreement. Division Six adduces further that Finish Line "continued to ship [excess inventory to Division Six] under the [2001] Agreement in

4

2014[,]" Br. Opp. 9, as though it were still in force. As a fallback position, Division Six maintains that the 2001 Agreement is ambiguous on this point.

Both parties agree that their dispute must be resolved with reference to Indiana law, so we apply the law of our state without further discussion. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991). Under Indiana law, "[t]he goal of contract interpretation is to determine the intent of the parties when they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012)[.]" *Tender Loving Care Mgmt., Inc. v. Sherls*, 14 N.E.3d 67, 72 (Ind. Ct. App. 2014). To that end,

> an unambiguous contract should be given its plain and ordinary meaning, *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008), and . . . no extrinsic evidence is admissible to explain the terms of such an agreement, *Univ. of S. Ind. Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). When the contract is ambiguous, however, extrinsic evidence is permissible to explain the intentions of the parties. *Reuille*, 888 N.E.2d at 771.

*Louis & Karen Metro Family, LLC v. Lawrenceburg Conservancy Dist.*, 616 F.3d 618, 622 (7th Cir. 2010).

"'A contract is ambiguous if a reasonable person would find the contract subject to more than one interpretation.'" *Tender Loving Care*, 14 N.E.3d at 72 (quoting *Barabas*, 975 N.E.2d at 813). The interpretation of an unambiguous contract is a matter of law. *Celadon Trucking Servs., Inc. v. Wilmoth*, 70 N.E.3d 833, 842 (Ind. Ct. App. 2017). Ambiguous contracts interpreted in light of extrinsic evidence must be submitted to jury. *Id.* Here, therefore, Finish Line's Rule 12(b)(6) motion will be granted only if the

contractual provisions unambiguously establish its position that the 2001 Agreement expired on December 31, 2013. *See id.*

The 2001 Agreement unambiguously expired on December 31, 2013, because neither the initial Agreement nor its subsequent Amendments established any mechanism for its perpetual self-renewal. Rather, the 2001 Agreement anchored its validity to specific dates. The 2001 Agreement defined "[t]he term" of the contract to be "eighteen months (18) commencing on March 1, 2001." Dkt. 7 Ex. A, at 7. In other words, by express, unambiguous definition, "the term" of the 2001 Agreement was "the period between March 1, 2001, and September 1, 2002." *See Bartel v. NBC Univ.'l, Inc.*, 543 F.3d 901, 904 (7th Cir. 2008) (holding similarly defined term to be unambiguous).

The 2001 Agreement provided further that if Division Six's right of first refusal did not accrue "within six months of the end of the term," *id.* at 8, that is, "within six months of September 1, 2002," then the Agreement would renew "for an additional" eighteen-month term. *Id.* Division Six's argument requires that this "additional" eighteen-month term be fed back recursively into the first line of Paragraph 9, becoming "the term" as defined therein, which itself would then be renewed if Division Six's right of first refusal did not accrue within six months of its end—and so on *ad infinitum*. But that is contrary to the express, unambiguous language of the Agreement: "the term" is the fixed period between March 1, 2001, and September 1, 2002, distinct from any "additional" term or extension. The 2001 Agreement makes no provision at all for a redefinition of "the term" as suggested by Division Six.

Accordingly, Division Six's argument that the 2002 and 2008 Amendments "added" language to the 2001 Agreement, as opposed to superseding the 2001 Agreement, is unavailing, as we have concluded that the language to which the Amendments were "added" does not indicate perpetual self-renewal.

Finish Line also points to another feature of the 2001 Agreement in support of its position, but unpersuasively. It argues that, "whenever possible," contractual language must be construed "so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Barabas*, 975 N.E.2d at 813. Thus, continues Finish Line, Division Six's reading of the 2001 Agreement tends to nullify its provision for extending the term "prior to the expiration of the term or any extension thereof" by written agreement of the parties. Dkt. 7 Ex. A, at 7. We disagree. The difference between a perpetually self-renewing contract cycling in eighteen-month periods, as contemplated by Division Six, and a contract whose term is capable of being extended by written agreement, is the timing of when Division Six would be forced to choose to exercise or forgo its right of first refusal. In other words, the parties not only bargained for how long their contract would last in an absolute sense, but also for how often and at what intervals Finish Line could entertain third-party offers and require Division Six to choose between matching such offers or walking away from the relationship.

We do agree with Finish Line, however, that Division Six has not pointed out any particular word or phrase that it believes generates ambiguity. Though Division Six has not raised the point, we note for the sake of completeness that "the indefinite article 'an'

7

generally implies the possibility of a larger number than just one[.]" *United States v. Hagler*, 700 F.3d 1091, 1097 (7th Cir. 2012). Thus, in a different context, the phrase "an additional term" might have given rise to some ambiguity. But where, as here, the noun preceded by the indefinite article is singular and is used in connection with a different noun preceded by the definite article, the most natural reading of the former is specific and singular. *Id.* In the language of the 2001 Agreement, "the eighteen-month term from March 2001 to September 2002 plus *an* additional eighteen-month term" in its plain and ordinary sense means "the term plus *one* additional term."

Division Six appeals to Finish Line's conduct in 2014 as suggesting that Finish Line believed itself still bound by terms of the 2001 Agreement. That argument misconstrues the nature of contractual ambiguity, however. "'[T]he making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties' having meant the same thing but on their having said the same thing.'" *Frigaliment Imp'g Co. v. B.N.S. Int'l Sales Corp.*, 190 F. Supp. 116, 117 (S.D.N.Y. 1960) (Friendly, J.) (on patent ambiguity) (quoting Oliver Wendell Holmes, *The Path of the Law*, *in Collected Legal Papers* 167, 178 (1920)). *See also Colfax Envelope Corp. v. Local No. 458-3M, Chi. Graphic Commc'ns Int'l Union*, 20 F.3d 750, 752 (7th Cir. 1994) (on latent ambiguity). Thus, the issue is not what Finish Line's executives may have subjectively believed, but whether there is any ambiguity in the objective words to which the parties agreed. Because there is none, Division Six's extrinsic facts will not be considered.

The same considerations defeat Division Six's plea for the opportunity to replead if the instant motion is granted. Division Six avers that "there are additional facts that [it] could plead, which would shed light on what Finish Line understood the [2001] Agreement as amended meant before its lawyers got involved in this case." Br. Opp. 11. What Finish Line understood the Agreement to mean is irrelevant; the only question is what the Agreement actually says. *Frigaliment*, 190 F. Supp. at 117. And the 2001 Agreement, as amended, says plainly that it expired on December 31, 2013, as we have explained.

## **Conclusion and Order**

For the reasons explained above:

Finish Line's motion to dismiss is GRANTED.

Division Six's complaint is DISMISSED WITH PREJUDICE.

Final judgment will be entered by separate document. Fed. R. Civ. P. 58(a).

IT IS SO ORDERED.

Date: 9/25/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Ryan L. Isenberg
ISENBERG & HEWITT, P.C.
ryan@isenberg-hewitt.com

Christopher D. Wagner
HOOVER HULL TURNER LLP
cwagner@hooverhullturner.com