UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DIVISION SIX SPORTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-03879-SEB-MJD |
| | ) | |
| THE FINISH LINE, INC. OF DELAWARE, | ) | |
| N/K/A THE FINISH LINE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT (DKT. 68)**

Plaintiff ("Division Six") sued Defendant ("Finish Line") for breach of contract. We granted Finish Line's motion to dismiss the complaint for failure to state a claim on which relief could be granted on the grounds that no contract bound the parties at the time of Finish Line's alleged breach, Dkt. 65 ("Order"), and entered final judgment. Dkt. 66. Now before the Court is Division Six's timely *Motion to Alter or Amend Judgment*, Dkt. 68, under Federal Rule of Civil Procedure 59(e). For the reasons below, the motion is denied.

**Standard of Decision**

"A Rule 59(e) motion will be successful only where the movant clearly establishes: '(1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.'" *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (quoting *Blue v. Hartford Life & Accident Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012)). Rule 59(e) "'does not provide a vehicle for a party to

1

undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'" *Id.* (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000)). Disposing of a Rule 59(e) motion is an exercise of the district court's sound discretion. *Id.* at 953 (citing *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)).

## **Analysis**

We recite the relevant contractual provisions for reference but otherwise assume the parties' familiarity with the Order:

> [PARAGRAPH 9] TERM OF AGREEMENT
>
> The term of this Agreement shall be eighteen months (18) commencing on March 1, 2001 (the Effective Date). The term may be extended by the written agreement of the parties prior to the expiration of the term or any extension thereof. If within six (6) months prior to the end of the term, Finish Line shall receive a bona fide, arm's length written offer from any third party to purchase the same or similar Finish Line Products that Division Six Sports is purchasing under the terms of this Agreement, then Division Six Sports shall have a right of first refusal for an additional eighteen (18) month period to extend this Agreement with Finish Line upon materially identical consideration and terms set forth in such third party's written offer. . . . If Finish Line does not receive a bona fide, arm's length written offer at any time within six months of the end of the term, then this Agreement will automatically renew for an additional eighteen (18) month term.

Dkt. 7 Ex. A, at 7–8 (internal subdivision omitted) ("the 2001 Agreement").

The following amendment to the 2001 Agreement was offered by Finish Line by letter and executed by Division Six:

CONTRACT EXTENSION

> Finish Line would be amenable to adding language to Paragraph 9 of the Purchase Agreement to reflect a three year (3) extension of the agreement (ie. through August 31, 2005). In addition, should Finish Line not receive a bona fide, arm's length written offer from any third party at any time within six months of the end of said extended term, then the Agreement will automatically renew for an additional three (3) year extension.

Dkt. 7 Ex. C, at 2 ("the 2002 Amendment"). All umodified terms remained in force and were reaffirmed. *Id.*

The 2001 Agreement, as amended by the 2002 Amendment, was again amended as offered by Finish Line by letter and executed by Division Six:

TERM EXTENSION

> Finish Line would be amenable to adding language to Paragraph 9 of the Purchase Agreement to reflect a new five (5) year term extension, commencing September 1, 2008 and ending December 31, 2013, ("Third Amendment Extended Term") unless sooner terminated pursuant to any provisions of the Governing Agreements.

Dkt. 7 Ex. E, at 1 ("the 2008 Amendment"). All umodified terms remained in force and were reaffirmed. *Id.*

The Order summarized the parties' arguments on Finish Line's motion to dismiss as follows:

> Finish Line argues that the 2001 Agreement, as amended by the 2002 and 2008 Amendments, unambiguously expired on December 31, 2013. Thus, it cannot be liable for breach of contract in 2014 because in 2014 there was no contract for it to breach.
>
> Division Six counters that "the parties bargained for a mutually beneficial process that would only end if Finish Line got a deal from a third party that Division Six elected not to

> match. In essence, the [2001] Agreement was never going to simply expire." The Agreement would continually renew of its own force for additional eighteen-month terms unless and until Division Six declined to exercise an accrued right of first refusal; the 2002 and 2008 Amendments only varied the duration of the automatic extensions. . . . As a fallback position, Division Six maintains that the 2001 Agreement is ambiguous on this point.

Order 4–5 (citation omitted). We rejected Division Six's perpetual-renewal argument and adopted Finish Line's position for substantially the reasons advanced by it. *Id.* at 6–8.

Division Six now contends that we committed manifest legal error (Division Six characterizes it as factual error, but the Order perforce addressed only legal questions) in failing to draw a logically necessary conclusion from the Order's premises: Division Six "assert[s] that [the Order] failed to consider the Agreement as a whole based on the Court's correct observation that the amendments to the Agreement *added to* the Agreement[,]" Mot. 5, such that, "[a]bsent an unmet bona fide offer, the Agreement automatically renewed [on December 31, 2013,] for an additional three-year extension, to and including December 31, 2016." *Id.* at 6.

Division Six now understands "adding language," as that phrase is used in the 2002 and 2008 Amendments, to mean "deleting old language and adding new language in its place," producing the following redlined contract terms with the source of the alteration noted in brackets:

> The term of this Agreement shall be ~~eighteen months (18) commencing on March 1, 2001 (the Effective Date)~~ [deleted by the 2002 Amendment] ~~extended by three (3) years (i.e., through August 31, 2005)~~ [added by the 2002 Amendment then deleted by the 2008 Amendment] extended by five (5) years, commencing September 1, 2008 and ending December

> 31, 2013, ("Third Amendment Extended Term") unless sooner terminated pursuant to any provisions of the Governing Agreements [added by the 2008 Amendment]. The term may be extended by the written agreement of the parties prior to the expiration of the term or any extension thereof. If within six (6) months prior to the end of the term, Finish Line shall receive a bona fide, arm's length written offer from any third party to purchase the same or similar Finish Line Products that Division Six Sports is purchasing under the terms of this Agreement, then Division Six Sports shall have a right of first refusal for an additional ~~eighteen (18) month~~ [deleted by the 2002 Amendment] three (3) year [added by the 2002 Amendment] period to extend this Agreement with Finish Line upon materially identical consideration and terms set forth in such third party's written offer. . . . If Finish Line does not receive a bona fide, arm's length written offer at any time within six months of the end of the term, then this Agreement will automatically renew for an additional ~~eighteen (18) month term~~ [deleted by the 2002 Amendment] three (3) year extension [added by the 2002 Amendment].

*See* Mot. 2–3.

Two conclusions follow. First, Division Six has not pointed to any manifest error of law. If "adding" is given its plain and ordinary meaning (as it must be under Indiana contract-interpretation principles, *Reuille v. E.E. Brandenberger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008), for the amending language is itself contractual, *see Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind. Ct. App. 1993)), this produces the following contract terms, which read quite differently than does Division Six's redlined version:

> The term of this Agreement shall be eighteen months (18) commencing on March 1, 2001 (the Effective Date). The term may be extended by the written agreement of the parties prior to the expiration of the term or any extension thereof. If within six (6) months prior to the end of the term, Finish Line shall receive a bona fide, arm's length written offer from any third party to purchase the same or similar Finish Line Products that Division Six Sports is purchasing under the

> terms of this Agreement, then Division Six Sports shall have a right of first refusal for an additional eighteen (18) month period to extend this Agreement with Finish Line upon materially identical consideration and terms set forth in such third party's written offer. . . . If Finish Line does not receive a bona fide, arm's length written offer at any time within six months of the end of the term, then this Agreement will automatically renew for an additional eighteen (18) month term.
>
> The term of the Agreement is extended for three (3) years (i..e, through August 31, 2005). In addition, should Finish Line not receive a bona fide, arm's length written offer from any third party at any time within six months of the end of said extended term, then the Agreement will automatically renew for an additional three (3) year extension.
>
> The term of the Agreement is extended for five (5) years, commencing September 1, 2008, and ending December 31, 2013, ("Third Amendment Extended Term") unless sooner terminated pursuant to any provisions of the Governing Agreements.

*See* Dkt 7 Ex. A, at 7–8; Dkt. 7 Ex. C, at 2; Dkt. 7 Ex. E, at 1. Common sense, buttressed by the principle *expressio unius exclusio alterius*, dictates that the 2001 Agreement as finally amended, when read in this way, contains no automatic renewal provision.

In other words, Division Six has not persuaded us that it was manifestly wrong not to interpret "adding language" as "*deleting and in its place* adding language." Indeed, when the parties intended to strike and replace language in the 2001 Agreement, they clearly expressed that intent, as in this example from the 2008 Amendment: "Effective October 1, 2008 and continuing through the remainder of the Third Amendment Extended Term, Schedule 2 of the Governing Agreements shall be deleted in its entirety, and the following rates shall apply[.]" Dkt. 7 Ex. E, at 2.

Second, Division Six's argument for reconsideration could and should have been presented in opposition to Finish Line's motion to dismiss. Division Six characterizes its argument as a plea to "take the Court's prior analysis to its natural and full conclusion." Reply Br. 3. However, as indicated above, Division Six has not persuaded us that its interpretation of the 2001 Agreement necessarily, or even probably, flows from the Order. Rather, Division Six's argument for reconsideration is simply an alternative reason for rejecting dismissal, the contours of which ought to have been clear, at the latest, when Finish Line filed its brief in support of its motion to dismiss, arguing clearly and cogently that "no automatic renewal right existed following the term" provided for by the 2008 Amendment. Dkt. 23, at 9. In opposition to Finish Line's motion, Division Six chose to stand on its perpetual-renewal argument—and only that argument. But there was then no bar whatsoever to making the argument Division Six makes now: that, even if the 2001 Agreement did not renew itself in perpetuity, still the parties were bound by 2001 Agreement as amended by the 2008 Amendment in 2014, when Finish Line ceased performing under the contract.

On Finish Line's motion to dismiss, the parties contested the meaning of "the term" as used in the 2001 Agreement. *See* Order 6. Now Division Six wishes to shift the grounds of contestation to the meaning of "adding" as used in the 2002 and 2008 Amendments. It could and should have done so in the first instance.

**Conclusion and Order**

Because Division Six has not clearly established a manifest error of law, and because its argument for reconsideration could have been raised earlier but was not, the *Motion to Alter or Amend Judgment* is DENIED.

IT IS SO ORDERED.

Date: 12/12/2018

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Andrew W. Hull
HOOVER HULL TURNER LLP
awhull@hooverhullturner.com

Ryan L. Isenberg
ISENBERG & HEWITT, P.C.
ryan@isenberg-hewitt.com

Cathleen Marie Shrader
BARRETT & MCNAGNY LLP
cms@barrettlaw.com

Christopher D. Wagner
HOOVER HULL TURNER LLP
cwagner@hooverhullturner.com